Camila Cossio (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11375
Portland, OR 97211
Phone: (971) 717-6727
ccossio@biologicaldiversity.org
*pro hac vice admission pending*

Brian Segee (Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa St. Suite 1100
Los Angeles, CA 90017
Phone: (805) 750-8852
bsegee@biologicaldiversity.org

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | |
| Plaintiff, | Case No. 2:21-cv-08660 |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| U.S. FISH AND WILDLIFE SERVICE; MARTHA WILLIAMS, in her official capacity as Principal Deputy Director of the U.S. Fish and Wildlife Service; and DEB HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior, | |
| Defendants. | |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to determine whether the Santa Ana speckled dace (*Rhinichthys osculus ssp.*) and the Long Valley speckled dace (*Rhinichthys osculus ssp.*) warrant protection as endangered or threatened species, in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary, congressionally mandated deadlines. 16 U.S.C. § 1533(b)(3). The agency's failure delays crucial, lifesaving protections for these imperiled fish, increasing their risk of extinction.

2. The Santa Ana speckled dace is a tiny fish endemic to a handful of southern California river systems. It is found nowhere else on earth. Due to the widespread destruction of their native habitat, Santa Ana speckled dace now occupy only remnants of their historical range and are largely restricted to headwater tributaries. The Santa Ana speckled dace is at risk of extinction due to multiple significant threats, including urban development, impacts from dams, and climate change.

3. The Long Valley speckled dace is a tiny fish endemic to the Long Valley volcanic caldera, east of Mammoth Lakes, in Mono County, California. Long Valley speckled dace are adapted to spring habitats. They have largely disappeared from suitable habitats, including Hot Creek, Little Alkali Lake, and various isolated springs and ponds in Long Valley. The Long Valley speckled dace is at risk of extinction due to multiple significant threats, including urban development, impacts from river channelization, and climate change.

4. The Center brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service is in violation of the ESA by failing to make required 12-month findings and directing the Service to publish their overdue 12-month listing determinations for the Santa Ana speckled dace and Long Valley speckled dace by a date certain.

**JURISDICTION**

5. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201-2202; and 5 U.S.C. § 706(2).

6. Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated July 19, 2021 (Santa Ana speckled dace notice) and a letter to the Service dated July 30, 2021 (Long Valley speckled dace notice). Defendants have not remedied the violations set out in the notices and an actual controversy exits between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this judicial district and a substantial part of the violations of law by Defendants occurred in this district.

**PARTIES**

8. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including in Washington, D.C. The Center has more than 81,000 active members throughout the country, including approximately 18,765 members in California, where the historic and remaining habitats of the Santa Ana and Long Valley speckled dace are found.

9. The Center and its members have deep and long-standing interests in the preservation and recovery of imperiled species, including the Santa Ana and Long Valley speckled daces and their habitats, and in the full and effective implementation of the ESA. The Center's members include individuals with

scientific, professional, educational, recreational, aesthetic, moral, and spiritual interests in the Santa Ana and Long Valley speckled daces, and who use the habitat of these species for a broad range of reasons. Plaintiff's interests in protecting and recovering these species are directly harmed by the Service's failure to issue timely 12-month findings on the petitions to list the Santa Ana speckled dace and the Long Valley speckled dace.

10. The Center's members include individuals who regularly visit areas that are occupied or were formerly occupied by Santa Ana and Long Valley speckled dace and seek to observe or study these fish in their natural habitat. Plaintiff's members derive recreational, spiritual, professional, scientific, educational, and aesthetic benefit from these activities, and intend to continue to use and enjoy these areas in the future.

11. For example, Center member Ileene Anderson, Deserts Director and Senior Scientist for the Center's Urban Wildlands Program, visits the Santa Ana speckled dace's habitat for professional projects and spends time in the area for personal and recreational reasons. She regularly visits the Santa Ana speckled dace's habitat within the upper Santa Ana River watershed, including the streams and tributaries of this watershed. Most recently, she looked for Santa Ana speckled dace at Lytle Creek and the Tujunga Wash stream in Los Angeles. She enjoys visiting the Angeles and San Bernardino National Forests and looking for Santa Ana speckled dace in the streams and creeks of these forests.

12. Center member Ileene Anderson also cares deeply about the Long Valley speckled dace and often looks for them in the wild. Most recently, in October 2021, she was performing field work in the Long Valley area and looked for the Long Valley speckled dace along the Hot Creek geological site. She was unable to find any dace, which caused her worry and stress regarding the future of the species and the impact its extirpation has on her professional goals and projects in the Long Valley area.

13. The above-described interests of the Center's members in these species and their habitat depends upon their conservation in the wild. Yet, unless they are promptly listed under the ESA, the Santa Ana and Long Valley speckled dace will remain unprotected by the Act and may go extinct. Accordingly, the Center submitted petitions to the Service to extend the substantive protections of the ESA by listing these species as "endangered" or "threatened." Defendants' failure to comply with their nondiscretionary duties under the ESA deprives the Santa Ana and Long Valley speckled dace of statutory protections that are necessary for their survival and recovery.

14. The Center and its members are injured by Defendants' failure to publish timely 12-month findings. Defendants' failure to act has delayed the application of the ESA's protections to the Santa Ana and Long Valley speckled dace, making the conservation of these species more difficult. These injuries are actual, concrete injuries that are presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries. The Center and its members have no adequate remedy at law.

15. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the species at issue in this suit. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

16. Defendant MARTHA WILLIAMS is the Principal Deputy Director of the U.S. Fish and Wildlife Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Williams is sued in her official capacity.

17. Defendant DEB HAALAND is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Haaland is sued in her official capacity.

# STATUTORY FRAMEWORK

**The Endangered Species Act**

18. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

19. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. *Id.* § 1532(16) (defining "species"). For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

20. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat." *Id.* §1536(a)(2).

21. ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

22. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or

wildlife which interbreeds when mature." *Id.* § 1532(16). A "distinct population segment" of a species is also known as a "DPS." When considering whether a population segment qualifies as a DPS under the Act, Service policy requires the agency to determine whether the population is "discrete" and "significant." If the Service determines that a population segment is both discrete and significant, then the population qualifies as a DPS and meets the ESA's definition of a "species" that may be classified as threatened or endangered.

23. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

24. The ESA requires the Service to determine whether any species is endangered or threatened because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

25. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in the 90-day finding that the petition does not

present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

26. If, as in this case, the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

27. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are m et. *Id.* § 1533(b)(3)(B). This is known as a listing determination.

28. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id.* § 1533(b)(3)(B)(ii).

29. Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id.* § 1533(b)(6)(A). This is known as a "final listing rule."

30. If the Service finds there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to a listing determination, the Service may extend this one-year period by six months to solicit additional data. *Id.* § 1533(b)(6)(B)(i). However, before the expiration of that six months, the Service must publish either a final regulation or a notice of withdrawal. *Id.* § 1533(b)(6)(B)(ii)-(iii).

# FACTUAL BACKGROUND

**Santa Ana Speckled Dace**

31. The Santa Ana speckled dace is a small, freshwater fish. Historically, it was distributed throughout several river systems in Southern California, including the Santa Ana, Los Angeles, San Gabriel, and San Yacinto Rivers.

32. Today, the Santa Ana speckled dace only occupies remnants of its historical range. Santa Ana speckled dace have been eliminated from most of the Los Angeles River basin, including tributaries Little Tujunga Creek, Pacoima Creek, and Santa Anita Canyon Creek. They have also disappeared from most of the Santa Ana River basin, including the middle reaches of the Santa Ana River, and tributaries Mill Creek, East Twin Creek, Santiago Creek, Silverado Canyon, Harding Canyon, and San Antonio Creek. Speckled dace no longer live in the San Jacinto River, South Fork San Jacinto River, or tributaries Herkey Creek and Strawberry Creek.

33. Santa Ana dace are threatened by dams, reservoirs, and water diversions because these systems lead to stream diversions that isolate them. There are seven dams and numerous water-diversion facilities on the Southern California rivers where the dace lives. Dams and diversions both deplete stream flows and isolate fish populations. Reservoirs and dams also favor introduced species that prey upon and compete with dace.

34. Other threats include river channelization and other flood control measures that harm the species migration patterns, urbanization, roads, runoff from agriculture into speckled dace habitat, mining, pollution, and climate change.

35. Santa Ana speckled dace remain in small, fragmented populations in only about one-fourth of their historical range and are restricted mainly to headwater tributaries within national forests.

**Long Valley Speckled Dace**

36. The Long Valley speckled dace is a small, freshwater fish. Historically, it was found within the Long Valley volcanic caldera east of Mammoth Lakes in Mono County, including in Hot Creek and isolated springs and ponds.

37. Today, the Long Valley speckled dace only occupies remnants of its historical range. The last remaining population found within its native range, in Whitmore Hot Springs, has disappeared, based on survey results conducted in 2019 that failed to locate any dace. This former habitat has been developed and is now a recreational swimming pool.

38. Long Valley speckled dace are threatened by geothermal energy development; dams and water diversions, especially surface water diversions; habitat alteration, including recreational development of their water sources and habitat, urban development, and rural development; livestock grazing; disease; predation; and climate change.

39. Long Valley speckled dace may now be extirpated from the wild. They appear to only exist in a refugium managed by the California Department of Fish and Wildlife Service.

**Listing Petition and Response**

40. Due to these threats and others, on May 11, 2020, the Center petitioned the Service to list the Santa Ana speckled dace as threatened or endangered under the ESA. At the request of the Service, the Center submitted supplemental support for the Santa Ana petition on May 18, 2020. On June 8, 2020, the Center also petitioned to list the Long Valley speckled dace as threatened or endangered under the ESA.

41. On June 17, 2021, the Service issued a positive 90-day finding that the petition to list the Santa Ana speckled dace presented "substantial scientific or commercial information indicating that the petitioned actions may be warranted."

Specifically, the Service found that the species may be a distinct population segment and that listing may be warranted due to various human-induced threats. 86 Fed. Reg. 32,241-32,243 (June 17, 2021). Some of the threats the Service included in their 90-day finding are threats from: dams, reservoirs, water diversions, barriers to migration and movement, roads, pollution, mining, concentrated recreational use, off-road vehicle use, predation, drought, wildfires, flooding, introduced species, climate change, and population fragmentation. Further, the Service found that the petition presented "substantial scientific or commercial information indicating that existing regulatory mechanisms may be inadequate to fully ameliorate the identified threat." *Id.*

42. Although Defendants issued a 90-day finding, they had a mandatory duty to publish their 12-month finding by May 11, 2021. Until Defendants publish the legally required 12-month listing determination and final listing rule, the Santa Ana speckled dace will continue to lack necessary protections under the ESA.

43. On September 29, 2021, the Service issued a positive 90-day finding that the petition to list the Long Valley speckled dace presented "substantial scientific or commercial information indicating that the petitioned actions may be warranted." Specifically, the Service found that the Long Valley speckled dace may warrant endangered species listing due to various threats. 86 Fed. Reg. 53,937.

44. Although Defendants issued a 90-day finding, they had a mandatory duty to publish their 12-month finding by June 8, 2021. Until Defendants publish the legally required 12-month listing determination and final listing rule, the Long Valley speckled dace will continue to lack necessary protections under the ESA.

## CLAIMS FOR RELIEF

### Violation of the ESA for Failure to Publish a Timely 12-Month Listing Determination for the Santa Ana speckled dace

45.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

46.     If, as in this case, the Service finds that listing may be warranted, the ESA requires the Service to publish a "12-month finding" with a listing determination within one year of receiving a listing petition. Defendants failed to perform their nondiscretionary duty to publish a timely 12-month listing determination on the petition to list the Santa Ana speckled dace as endangered or threatened, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

### Violation of the ESA for Failure to Publish a Timely 12-Month Listing Determination for the Long Valley speckled dace

47.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

48.     If, as in this case, the Service finds that listing may be warranted, the ESA requires the Service to publish a "12-month finding" with a listing determination within one year of receiving a listing petition. Defendants failed to perform their nondiscretionary duty to publish a timely 12-month listing determination on the petition to list the Long Valley speckled dace as endangered or threatened, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants have violated the ESA by failing to issue a timely 12-month listing determination in response to the petitions to list the Santa Ana speckled dace and Long Valley speckled dace;

2. Provide injunctive relief compelling Defendants to publish in the Federal Register 12-month listing determinations on the petitions to list the Santa Ana speckled dace and Long Valley speckled dace by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 2nd day of November, 2021.

/s/ Camila Cossío
Camila Cossio (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6727
ccossio@biologicaldiversity.org
*pro hac vice admission pending*

/s/ Brian Segee
Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
tel: (805) 750-8852
bsegee@biologicaldiversity.org

*Attorneys for Plaintiff*